UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANDRE R. ROGERS,

                  Petitioner,

     -against-

SUPT. MARK BRADT,

                  Respondent.

------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-2696 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

     Petitioner Andre Rogers brings this pro se Petition for Writ of Habeas Corpus pursuant to

28 U.S.C. § 2254 attacking his state criminal convictions in 2003 for robbery and possession of

stolen property. His original petition asserts three claims: (1) that he received ineffective

assistance of appellate counsel; (2) that he was denied an evaluation by an impartial psychiatric

expert prior to trial; and (3) that the trial court failed to respond to his concerns submitted in

handwritten letters during pre-trial proceedings. Rogers also recently moved to add a claim that

he received ineffective assistance of trial counsel. For the reasons set forth below, Rogers's

Petition and his motion to amend his Petition are DENIED.

## I.    BACKGROUND

###     A.    Facts[1]

     On November 21, 2001, Rogers entered a Greenpoint Savings Bank located at 29-40

Union Street in Queens, New York. (Trial Tr. (Dkt. 10-9) at 136-38.) Rogers approached

employee Phillip Cavaliere, who was seated in the customer service area, and said, "I want fifties

and hundreds and I'm not kidding." (Id. at 136-38.) As Cavaliere stood up, he felt a blunt, hard,

cylindrical object protruding several inches from Rogers's jacket pocket against his (Cavaliere's)

---

[1]     The following summary of facts is drawn from the trial transcript. (See Dkt. 10-9.)

left side, which he believed to be a gun. (Id.) As Cavaliere and Rogers walked toward the rear of the building, Rogers continued to press the object against Cavaliere and told him to "hurry up." (Id. at 140-41.) Together, Cavaliere and Rogers walked to employee Tracy Keys at a teller's station, and Cavaliere told Keys to "give [Rogers] the money." (Id. at 141, 175.) Keys did not respond immediately, and Cavaliere told her to "give it to him now." (Id. at 142, 176.) Keys gave Rogers a stack of money that contained a hidden packet of red dye designed to explode shortly after being removed from the bank. (Id. at 142, 167-68, 176-77.)

After Rogers left the bank with the stack of money, the bank employees called 911 and the police arrived soon thereafter. (Id. at 143.) Police officer Matthew Divirgilio identified Rogers a few blocks from the bank, based on a physical description provided over radio, and arrested him. (Id. at 199.) Upon being stopped, Rogers told Divirgilio, "You got me." (Id. at 201.) Divirgilio saw red dye on Rogers's clothing and found a leather glove in each of Rogers's jacket pockets, but no guns or other metal objects. (Id. at 222.)

### B.    Trial Court Proceedings

Rogers was charged in New York Supreme Court, Queens County, with first-degree robbery, second-degree robbery, and fifth-degree criminal possession of stolen property.

Rogers's jury trial began on December 10, 2002. (Trial Tr. at 119.) Rogers was represented at trial by Harold Ehrentreu, Esq. (Id.) In defense counsel's opening statement, he conceded that "[t]here is no question a bank robbery took place," and instead indicated his intention to contest the prosecution's allegation that Rogers had used or represented that he had a gun during the robbery. (Id. at 134-35.)

Phillip Cavaliere, Tracy Keys, and Officer Divirgilio testified as prosecution witnesses, and all identified Rogers as the man who had committed the robbery. (Id. at 137 (Cavaliere),

2

172 (Keys), 200 (Divirgilio).)  Rogers testified in his own defense.  He stated that he had approached Cavaliere in the bank and asked for money, but that he never touched Cavaliere and had nothing in his pockets except leather gloves.  (Id. at 234-35.)

The jury convicted Rogers of first-degree robbery and fifth-degree possession of stolen property, rejecting an affirmative defense that the gun displayed was unloaded.  (See id. at 359-60.)

On February 6, 2003, Rogers filed a pro se motion to set aside the verdict pursuant to New York Criminal Procedural Law § 330.30.  (Def. Mot. to Set Aside Verdict (Dkt. 10-2) at 209.)  Ehrentreu refused to sign the motion because it alleged that he had provided ineffective assistance by attempting to persuade Rogers to accept a plea offer, failing to request a court appointed psychiatric evaluation for Rogers, and failing to read from a questionnaire provided by Rogers for direct examination.  (Id. at 212-13.)  Ehrentreu stated on the record that he believed the motion contained "bald-faced lies," and that he had discussed with Rogers the lack of legal grounds for presenting a psychiatric or insanity defense.  (Sentencing Tr. (Dkt. 10-1) at 3, 8-9.)  He stated that he had explained to Rogers that the best strategy was to argue that no gun was present during the robbery, and thus seek only a third-degree robbery conviction.  (Id. at 10.)  The court denied the § 330 motion and sentenced Rogers as a persistent violent felony offender to the minimum mandatory sentence of twenty years to life for first-degree robbery and one year for fifth-degree possession of stolen property, to run concurrently.  (Id. at 25-26.)

### C.  Direct Appeal

In February 2004, Rogers perfected an appeal of his judgment of conviction to the New York Supreme Court Appellate Division, Second Department, filed on his behalf by Bertrand Kahn, Esq.  (Def. App. Br. (Dkt. 10-2) at 2.)  Rogers argued: (1) that the evidence was

insufficient to establish first-degree robbery and the conviction should be reduced to third-degree robbery; and (2) that the sentence pursuant to New York's persistent violent offender statute was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000). (Id.) Rogers also filed a pro se supplemental brief, arguing that his conviction should be reversed due to Ehrentreu's ineffectiveness at trial. (Def. App. Supp. Br. (Dkt. 10-2) at 46.) On June 6, 2005, the Appellate Division affirmed Rogers's conviction. People v. Rogers, 796 N.Y.S.2d 134 (N.Y. App. Div. 2d Dep't 2005). With respect to Rogers's pro se arguments, the court concluded that "[t]he defendant's remaining contentions, raised in his supplemental pro se brief, are without merit." Id. at 135. On September 28, 2005, the New York Court of Appeals denied Rogers's motion for leave to appeal. People v. Rogers, 5 N.Y.3d 832 (2005).

**D.     First Motion for a Writ of Error Coram Nobis**

On May 16, 2006, Rogers filed a pro se motion for a writ of error coram nobis in the Appellate Division, Second Department. (May 16, 2006, Def. Mot. for Error Coram Nobis (Dkt. 10-2) at 161.) Rogers argued that his appellate attorney Kahn was ineffective because he had failed to argue on appeal that Rogers's trial counsel was ineffective. Rogers argued that his trial counsel was ineffective because: (1) he conceded Rogers's guilt as to third-degree robbery in his opening statement (id. at 185-89); (2) he refused to use the questionnaire prepared by Rogers (id. at 191); and (3) he became an adversary during the discussion subsequent to Rogers's submission of his § 330 motion (id. at 220-21).

On October 10, 2006, the Appellate Division granted Rogers leave to file a brief addressing only whether trial counsel became a witness against Rogers during submission of the § 330 motion and whether the trial court should have assigned Rogers a new attorney at that time. (App. Div. Leave to Br. (Dkt. 10-3) at 69-70.) The Appellate Division subsequently

4

denied Rogers's motion on September 25, 2007. People v. Rogers, 842 N.Y.S.2d 584 (N.Y.

App. Div. 2d Dep't 2007). The court concluded that, while trial counsel made statements

"adverse to the defendant's contention that he was denied such effective assistance [of trial

counsel]," the trial court had not been influenced by these statements. Id. at 585. Thus, the trial

court did not need to assign Rogers new counsel, and "appellate counsel's failure to raise these

issues on appeal did not constitute ineffective assistance of appellate counsel." Id. On

December 12, 2007, the New York Court of Appeals denied Rogers's leave to appeal. People v.

Rogers, 9 N.Y.3d 1009 (2007).

### E.    Motion to Vacate Judgment

On January 8, 2008, Rogers filed a pro se motion to vacate the judgment of conviction

under C.P.L. § 440.10. (Def. Mot. to Vacate J. (Dkt. 17-1).) Rogers alleged that: (1) counsel

was ineffective because he admitted Rogers's guilt during his opening statement, and he failed to

investigate and use Rogers's mental history at trial to establish that Rogers did not appreciate the

criminality of his acts; (2) the trial court committed error by its failure to investigate complaints

that Rogers made in a letter to the court regarding his attorney; and (3) the psychiatric expert that

examined Rogers was not impartial, changed answers that Rogers gave during his psychiatric

examination, failed to include certain information pertaining to Rogers's mental illness, and

engaged in a conspiracy to establish that Rogers did not have a mental illness at the time of the

bank robbery. Id.

On August 11, 2008, the Supreme Court, Queens County, denied Rogers's motion. (Aug.

11, 2008, N.Y. Sup. Ct. Decision & Order (Dkt. 10-2) at 230.) The court concluded that (1) the

claim of conspiracy by mental health professionals was "made solely by defendant and

unsupported by other evidence or affidavit from a person with knowledge of defendant's alleged

5

mental condition and is merely conclusory"; and (2) the claim that the trial court had failed to properly investigate complaints was similarly "made solely by defendant and uncorroborated by any other affidavit or evidence, and there is no reasonable possibility that it is true." (Id. at 232.) On August 31, 2009, the Appellate Division, Second Department, denied Rogers's leave to appeal. (N.Y. App. Div. Decision & Order on Appl. (Dkt. 10-5) at 70.)

### F.    Second Motion for a Writ of Error Coram Nobis

On September 8, 2009, Rogers filed a second pro se motion for a writ of error coram nobis. (Sept. 8, 2009, Def. Mot. for Error Coram Nobis (Dkt. 10-5) at 53.) Rogers claimed that appellate counsel was ineffective for failing to raise on direct appeal that (1) the trial court had improperly questioned Rogers, had improperly struck portions of Rogers's testimony, and had improperly permitted trial counsel to concede Rogers's guilt without Rogers's permission (id. at 86-87, 92-93, 96, 100); (2) Rogers was denied a fair trial due to a conflict of interest because Rogers's trial counsel was retained by the same county that prosecuted him (id. at 98); (3) trial counsel was ineffective when he attempted to persuade Rogers to take a plea deal, conceded Rogers's guilt without Rogers's consent, and when he made adverse statements during the submission of the § 330 motion (id. at 99-100, 102, 104-05); and (4) Rogers was denied a fair trial due to the cumulative errors committed by both the trial court and trial counsel (id. at 109-13).

On February 9, 2010, the Appellate Division denied Rogers's motion. People v Rogers, 892 N.Y.S.2d 904 (N.Y. App. Div. 2d Dep't 2010). The court concluded that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." Id. On May 20, 2010, the New York Court of Appeals denied Rogers's leave to appeal. People v. Rogers, 14 N.Y.3d 892 (2010).

6

### G. Petition for Writ of Habeas Corpus

On June 1, 2010, Rogers submitted the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Pet. (Dkt. 1).) Broadly, he asserts three claims: (1) that he received ineffective assistance of appellate counsel; (2) that he was denied an evaluation by an impartial psychiatric expert; and (3) that the trial court failed to respond to his concerns in handwritten letters submitted during pre-trial proceedings. (Id.) Respondent submitted a memorandum of law in opposition to the Petition (Resp. Opp'n (Dkt. 11)), and Rogers replied (Pet. Reply (Dkt. 15)).

## II.     HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar[2]; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A.     Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the

---

[2]     Procedural bar is not at issue in any of the claims in the instant case, and will therefore not be discussed further.

legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191

(2d Cir. 1982) (en banc) (internal quotation marks omitted).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order

for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL

3298876, at *6 (E.D.N.Y Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278

(1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state

court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278).

"This means, in essence, that in state court the nature or presentation of the claim must have been

likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192.  Thus, even if a

petitioner does not cite any federal constitutional provisions, he may fairly present his federal

claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis,
> (b) reliance on state cases employing constitutional analysis in like factual
> situations, (c) assertion of the claim in terms so particular as to call in mind a
> specific right protected by the Constitution, and (d) allegation of a pattern of facts
> that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, *every* claim that a petitioner makes in his § 2254 application must first have

been raised in state court in order for the petition to be considered exhausted.  This "total

exhaustion" rule requires that "a district court [ ] dismiss habeas petitions containing both

unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982).  But there is

an important exception to the total exhaustion rule, created by a 1996 amendment to AEDPA,

whereby a district court may *deny* an *entire* habeas petition on the merits notwithstanding a

petitioner's failure to exhaust some or all of his claims.  See 28 U.S.C. § 2254(b)(2).  In other

words, a court may deny but not grant "mixed petitions" on the merits.  Caswell v. Racetti, No.

8

11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v.

Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

### B.    AEDPA Deference

Where a state court does reach the merits of a claim asserted in a § 2254 habeas petition,

the state's decision is reviewed under the deferential standard set forth in AEDPA.  AEDPA

provides that:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—(1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a
> decision that was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the

Supreme Court's decisions as of the time of the relevant state-court decision." Howard v.

Walker, 406 F.3d 114, 122 (2d Cir. 2005).  A state court decision is "contrary to" clearly

established federal law "if the state court arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides a case differently than [the

Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S.

362, 413 (2000).  A state court decision is an "unreasonable application" of clearly established

federal law "if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's

claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal

quotation marks, alterations, and emphases omitted).  The petition may be granted only if "there

is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III. DISCUSSION

### A. Ineffective Assistance of Appellate Counsel

Rogers argues that his appellate counsel provided him with ineffective assistance, in violation of the Sixth Amendment as applied to the states through the Fourteenth Amendment. Ineffective assistance of counsel claims are governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel is violated.

First, under Strickland's "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

10

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside," or if the lawyer otherwise had "a reasonable justification for the decision." Greiner, 417 F.3d at 319 (internal quotation marks omitted).

Second, under Strickland's "prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

Establishing a claim for ineffective assistance of counsel is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." Eze v. Sendkowski, 321 F.3d 110, 112 (2d Cir. 2003); see also Harrington, 131 S.Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotation marks and citation omitted)). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly"; instead, the petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

11

Rogers asserts several grounds for his ineffective assistance claim. He argues that appellate counsel: (1) failed to argue that trial counsel provided ineffective assistance by conceding during opening statements that Rogers committed third-degree robbery, contrary to Rogers's wishes (Pet. at 5-6, 19-20, 26-27); (2) failed to argue that trial counsel provided ineffective assistance by failing to present testimony of Rogers's acquaintance Janice Walker (id. at 20); (3) failed to argue that the trial judge improperly interrupted Rogers's testimony and questioned Rogers in a manner that conveyed to the jury the judge's personal belief of Rogers's guilt (id. at 9-11, 21-23); (4) failed to argue that the trial judge improperly struck relevant portions of Rogers's testimony (id. at 21-22); (5) failed to argue that trial counsel was conflicted because he relied on the trial judge for appointments (id. at 23-24); (6) failed to argue that trial counsel provided ineffective assistance when he took an adverse position subsequent to Rogers's filing of the § 330 motion (id. at 6-9, 20-21, 26); and (7) failed to argue that Rodgers was denied a fair trial due to the cumulative effect of the errors committed by both the trial judge and trial counsel (id. at 26-27). For the reasons that follow, none of these assertions provides a basis for habeas relief.

    1.   <u>Exhaustion</u>

As a preliminary matter, Rogers has exhausted all of his ineffective assistance claims. In his first motion for a writ of error coram nobis, Rogers raised in constitutional terms the argument that appellate counsel was ineffective for failing to raise claims that trial counsel was ineffective when he conceded guilt to third-degree robbery in opening statements (May 16, 2006, Def. Mot. for Error Coram Nobis at 185-89) and that trial counsel took an adverse position during the motion to set aside the verdict (id. at 197-99). The Appellate Division granted leave to brief only the issue of whether trial counsel had taken an adverse position (App. Div. Leave to

Br. at 69-70), and ultimately denied the claim on the merits. People v. Rogers, 842 N.Y.S.2d 584 (N.Y. App. Div. 2d Dep't 2007). The Court of Appeals denied leave to appeal. People v. Rogers, 9 N.Y.3d 1009 (2007).

In Rogers's second motion for a writ of error coram nobis, he raised in constitutional terms the arguments that appellate counsel was ineffective for not arguing on direct appeal that: trial counsel failed to present trial testimony of Janice Walker (Sept. 8, 2009, Def. Mot. for Error Coram Nobis at 17-18); the trial judge interrupted and cross-examined Rogers during his testimony (id. at 40-45); the trial judge struck relevant portions of Rogers's testimony (id. at 45-46); trial counsel was reliant on the trial judge for appointments (id. at 51-52); and that the cumulative errors denied Rogers a fair trial (id. at 62-66). All were discussed in terms of the Sixth Amendment and a Strickland theory of ineffective assistance of counsel. These claims were denied on the merits by the Appellate Division, People v Rogers, 892 N.Y.S.2d 904 (N.Y. App. Div. 2d Dep't 2010), and the Court of Appeals denied leave to appeal, People v. Rogers, 14 N.Y.3d 892 (2010).

Respondent concedes exhaustion to all of these claims with the exception of the claim of conflict of interest arising from trial counsel's reliance on the court. (Resp. Opp'n at 30-35.) In the coram nobis motion, Rogers framed the constitutional issue around the fact that the "trial court assigned counsel retained by the same county prosecuting [him]," (Sept. 8, 2009, Def. Mot. for Error Coram Nobis at 51), while in the habeas petition the issue arises from court appointed counsel's reliance on the trial judge for future assignments to represent indigent defendants (Pet. at 23-24). However, both—to the extent that they were presented to the state court—derive essentially from the same claim that Rogers was denied his Sixth Amendment right to conflict-free counsel due to an employment relationship between trial judge and indigent defense

13

counsel. Thus, the claim is exhausted because the legal basis of the claim made in state court is the "substantial equivalent" of the habeas claim. Picard, 404 U.S. at 278.

Rogers's claims must therefore be reviewed on the merits under the deferential AEDPA standard of review.

### 2.    Trial Counsel's Concession of Rogers's Guilt

Rogers claims that his appellate attorney provided ineffective assistance of counsel when he failed to argue on direct appeal that trial counsel provided ineffective assistance of counsel by conceding Rogers's commission of third-degree robbery during opening statements. In his opening statement, trial counsel stated, "I agree with about 95 percent of what [prosecutor] Ms. Pirotti just said to you. . . . There is no question a bank robbery took place." (Trial Tr. at 134.) He continued by asking, "What happened in the bank, was there any even hint of a weapon? Was there any mention of a weapon? Was there any use of a weapon at all? That's something you are going to have to decide." (Id.) Thus, trial counsel adopted a strategy of conceding Rogers's guilt as to third-degree robbery, and decided to focus exclusively on disputing the evidence of a first-degree robbery conviction based on lack of evidence of a gun.

Rogers writes that he was "shocked to hear defense counsel concede [his] guilt at the start of trial. (Pet. Reply at 20.) Rogers argues that trial counsel was thereby ineffective because this concession fell beneath an "objective standard of reasonableness" by essentially preventing the ability to present a defense of intoxication. This argument lacks merit because trial counsel adopted a reasonable defense strategy in view of the substantial evidence against his client's claim of innocence and the great likelihood that the jury would reject his claims of intoxication or insanity,[3]

---

[3]      Rogers was caught on camera robbing the bank (Trial Tr. at 170, 218-19, 288), was arrested minutes after the robbery covered in the red dye from the exploding dye pack, and was identified by three prosecution witnesses

14

Prior to trial, Rogers declined a plea offer of fourteen years to life for attempted second-degree robbery, stating, "[m]y problem in taking this cop out is that I, you know, weapon-wise, there was no weapon, no imitation of a weapon or anything like that." (Trial Tr. at 4-5.) Faced with substantial evidence that Rogers had committed the robbery and Rogers's assertion that he did not have a weapon, defense counsel adopted a strategy of conceding to the robbery, but arguing that Rogers was unarmed, and thus guilty only of third-degree robbery. If successful, Rogers could have faced a substantially reduced indeterminate sentence of two to four years in prison. (Resp. Opp'n at 54.) In doing so, trial counsel acted reasonably. See United States v. Arnold, 126 F.3d 82, 89 (2d Cir. 1997) ("Trial counsel's strategy to concede the other elements of the offense was reasonable in light of the overwhelming evidence in the case . . . ."). The claim thus fails to satisfy Strickland's "performance" prong.

This claim also does not satisfy the Strickland "prejudice" prong because there is no reasonable probability that, but for failure to present an intoxication defense, the outcome would have been different. Even with evidence of intoxication, "the general rule is that an intoxicated person can form the requisite criminal intent to commit a crime." People v. Mannarino, 829 N.Y.S.2d 122 (N.Y. App. Div. 2d Dep't 2006). Rogers also admitted on cross-examination that he knew that he was robbing a bank, greatly weakening any likelihood of success of this defense. (See Trial Tr. at 232.) Given the weakness of this defense strategy, appellate counsel's failure to present it on direct appeal does not rise to the level of ineffective assistance. See Jones v. Barnes, 463 U.S. 745, 745 (1983) (holding that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant). The state's rejection of this

---

as the man who had committed the robbery. Rogers also admitted on direct examination that he had committed the robbery. (Id. at 235.)

claim was thus not contrary to, nor an unreasonable application of, clearly established federal law.

### 3.   Trial Counsel's Failure to Present Testimony of Janice Walker

Rogers argues that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for not presenting a statement by Janice Walker, who accompanied Rogers shortly before he entered the bank. (Pet. at 20.) In this statement, Rogers contends, Walker said that Rogers "appeared unaware because [Walker] had to guide [Rogers] to [the] bank after he initially walked past." (Id.) Rogers argues this statement should have been presented at trial because it would corroborate his claim that he lacked the requisite criminal intent to commit robbery.

In her statement, Walker said that she had been using crack cocaine with Rogers and had accompanied him to the bank. (St. of Janice Walker (Dkt. 10-8) at 18.) As they approached the bank, Rogers was walking fast as though he was trying to get ahead of her. (Id.) Watching through the bank window, she described the events in similar terms to testimony provided by Cavaliere and Keys. (Id. at 19.)

Presentation of Walker's statement could only have served the defense as evidence that Rogers had been using crack cocaine prior to the robbery. While this may have been evidence of intoxication, defense counsel chose not to pursue this strategy. Given the fact that defense counsel's decision not to present an intoxication defense was reasonable (see supra Part III. A.2), it follows that counsel acted reasonably by not presenting the statement or testimony of Janice Walker. Appellate counsel acted reasonably in not raising this claim on appeal, and so the Strickland "performance" prong is not satisfied. The state's rejection of this claim was thus not contrary to, nor an unreasonable application of, clearly established federal law.

16

    4.    <u>Trial Judge's Interruptions and Cross-Examination of Rogers's Testimony</u>

Rogers claims that appellate counsel provided ineffective assistance for failing to raise claims that the trial judge interrupted Rogers's testimony (Pet. at 9) and cross-examined Rogers in ways that "clearly conveyed to jurors the trial judge's belief that appellant was guilty," depriving him of a fair trial (<u>id.</u> at 22).

Based on a review of the trial transcript, it is clear that this claim lacks merit. "[A] trial judge's duty to see the law correctly administered cannot be properly discharged if the judge remains inert." <u>United States v. Filani</u>, 74 F.3d 378, 385 (2d Cir. 1996). "In its participation at trial a district court should ask those questions necessary for such purposes as clarifying ambiguities, correcting misstatements, or obtaining information needed to make rulings." <u>Id.</u> at 386 (internal quotations omitted). In this role, a judge may "refuse to allow cumulative, repetitive, or irrelevant testimony, and may control the scope of examination of witnesses." <u>Geders v. United States</u>, 425 U.S. 80, 87 (1976) (internal citations omitted).

During Rogers's testimony, the trial judge interrupted numerous times, but only to ask Rogers to answer the question posed to him, and occasionally to briefly rephrase the question. (Trial Tr. at 241-65.) The trial judge never engaged Rogers in a questioning of his own. <u>Cf. Filani</u>, 74 F.3d at 385 (ruling that trial judge's lengthy interrogation of defendant led the jury to doubt defendant's veracity); <u>United States v. Fernandez</u>, 480 F.2d 726, 737 (2d Cir. 1973) (ruling that judge's lengthy additions to government's cross-examination were improper). Rather, his comments were limited to refusing irrelevant or repetitive testimony. Because the trial judge conducted no independent inquiries of Rogers, the claim that the trial court was expressing disbelief lacks support in the record, and the trial judge neither interrupted nor cross-examined Rogers in a manner that denied him a fair trial. Appellate counsel acted

17

reasonably in not raising this claim on direct appeal, and so the claim fails on the <u>Strickland</u>
"performance" prong. The state's rejection of this claim was therefore not contrary to, nor an
unreasonable application of, clearly established federal law.

        5.    <u>Trial Judge's Striking of Rogers's Testimony</u>

Rogers contends that appellate counsel provided ineffective assistance for failing to raise
on direct appeal that the trial court's striking of a line of Rogers's testimony denied him his full
right to testify on his own behalf. (Pet. at 21-22.) Specifically, he refers to the following line of
testimony during cross-examination:

> Q: And you knew that you were going to get caught looking that way walking
> down the street with [the red dye] on you, right?
>
> A: Again, I would have turned myself in if I didn't get arrested.
>
> THE COURT: Not responsive. Stricken.

(Trial Tr. at 264-65). Rogers claims that in this response he attempted to address elements of the
offense by arguing that he lacked both the intent to exert permanent or virtually permanent
control over the property taken (required to prove robbery) and the awareness of the criminality
of his actions. (Pet. Reply at 53-55.) In striking the testimony, Rogers argues his right to testify
was implicated. (<u>Id.</u>)

Rogers's claim lacks merit. As described above, the trial judge is permitted to refuse
irrelevant testimony and control the scope of examination of witnesses. <u>Geders</u>, 425 U.S. at 87.
Additionally, "[a] defendant's right to present a full defense, including the right to testify on his
own behalf, is not without limits. In responding to the charges against him, an accused must
comply with the established rules of procedure and evidence, as must the prosecution, in order to
insure a fair trial." <u>United States v. Bifield</u>, 702 F.2d 342, 350 (2d Cir. 1983).

18

Roger's answer was not responsive to the question posed. Whether or not Rogers would have turned himself in had he not been arrested does not answer the question of whether he was aware of the likelihood he would be caught with the red dye on his jacket. Rogers was entitled to present alternate theories and defenses through direct examination and presentation of other evidence, and so the judge's control of the scope of answers on cross-examination did not infringe upon Rogers's ability to testify on his own behalf. The Strickland "performance" prong is therefore not satisfied as appellate counsel was not unreasonable in failing to raise this meritless claim. The state court's rejection of this claim was thus not contrary to, nor an unreasonable application of, clearly established federal law.

### 6. Trial Counsel's Reliance on Trial Judge for Appointments

Rogers next argues that appellate counsel was ineffective for failing to argue on direct appeal that he was denied his right to conflict-free trial counsel because trial counsel, "reliant on trial judge for appointments, provided appellant with the ineffective assistance that comported with trial judge's personal belief that appellant was guilty." (Pet. at 23-24.) He further contends that trial counsel's decision to concede to the elements of third-degree robbery and failure to present relevant evidence was based on a desire to please the trial judge, and the two did "all they could to persuade appellant to plead guilty up until the eve of trial." (Id. at 24.)

This claim lacks factual support. "A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002) (internal quotations omitted). Unlike most claims of ineffective assistance of counsel, a claim of actual conflict of interest need not satisfy the Strickland "prejudice" prong, because prejudice is presumed. Id. at 91. "Rather, he need only establish (1) an actual conflict of interest that (2) adversely affected his counsel's performance."

19

Id. "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." Id. Rogers argues that his trial counsel's desire to please the trial court resulted in a course of action contrary to his interests. However, because this contention is unsupported by the record, Rogers has failed to demonstrate an actual conflict of interest.

First, the record does not demonstrate that the trial judge had a personal opinion of Rogers's guilt or a personal desire that Rogers accept a plea offer. While the trial judge did present Rogers with a plea offer, when Rogers declined, the trial judge told Rogers, "You are a grown man. I don't want to force you to do anything. You want a trial, we'll give you a trial." (Trial Tr. at 5.) Second, even if the trial judge did harbor such a view, the record fails to demonstrate that trial counsel's choice of strategy was made in an attempt to please the trial judge. Rather, as described above, trial counsel's decisions to concede some elements of the defense and decline to present certain evidence were sound strategic choices given the circumstances. (See supra Parts III.A.2-3.) Third, Rogers claim that his trial counsel's appointment generated a conflict of interest is vague and conclusory in nature. Nothing in the record suggests that the procedure by which trial counsel was appointed was improper, or in violation of New York County Law, Article 18-B § 722, which establishes procedures for appointing counsel for indigent defendants. Thus, appellate counsel was not ineffective for failing to raise this claim on appeal. The state court did not make an unreasonable determination of the facts in light of the evidence presented.

20

### 7.    Trial Counsel's Taking of a Position Adverse to Rogers

Rogers claims that appellate counsel was ineffective for failing to raise on direct appeal

the claim that trial counsel became a witness against Rogers when he took an adverse position to

Rogers's pro se motion to set aside the verdict filed under New York Criminal Procedure Law

("CPL") § 330.30. In that motion, Rogers alleged that trial counsel provided ineffective

assistance during trial. (Def. Mot. to Set Aside Verdict at 209.) In response, trial counsel stated

that the motion contained "bald-faced lies" and proceeded to describe the various ways in which

his counsel had in fact been effective. (Sentencing Tr. at 3, 8-10.) The trial court denied the

motion because it did not meet the requirements set forth in CPL § 330.30 (id. at 11), and

sentenced Rogers as a persistent violent felony offender to the mandatory minimum sentence of

twenty years to life for first-degree robbery and one year for fifth-degree possession of stolen

property, to run concurrently (id. at 25-26).

The Appellate Division ruled that while statements made by trial counsel were adverse to

Rogers's contentions of ineffective counsel, "the [trial court] was not influenced by the

statements of the defendant's trial counsel," and so "the appellate counsel's failure to raise these

issues on appeal did not constitute ineffective assistance of appellate counsel." Rogers, 842

N.Y.S.2d at 584. For the reasons stated below, the state court's ruling was not contrary to, nor

an unreasonable application of, clearly established federal law.

Rogers's claim fails to satisfy the Strickland "prejudice" prong,[4] as the trial court's ruling

on the § 330 motion and sentencing of Rogers would not reasonably have differed but for trial

---

[4]     Rogers contends that he does not need to satisfy the Strickland prejudice requirement because trial
counsel's errors amounted to an actual conflict of interest. See Lopez v. Scully, 58 F.3d 38, 41 (2d Cir. 1995)
(ruling that an actual conflict of interest existed where trial counsel took a position adverse to defendant's assertion
that he had been coerced to plead guilty, and so counsel's actions were presumptively prejudicial). However, the
disagreements between Rogers and trial counsel were limited to disagreements of proper trial strategy and the
presentation of evidence, and thus a conflict of interest did not arise when the trial judge inquired into the nature of
the disagreement. See United States v. White, 174 F.3d 290, 296 (2d Cir. 1999) (ruling that the trial court's

21

counsel taking an adverse position.  First, the trial court denied the § 330 motion because it did

not fall within the parameters of CPL § 330.30(1)-(3), and stated there were no grounds for

reversal of conviction given the "overwhelming evidence in the case." (Sentencing Tr. at 3,

8-11.) The Appellate Division correctly found that the trial judge would not have found

differently had trial counsel not argued against his ineffective assistance of counsel claim.

Second, the trial judge sentenced Rogers to the minimum sentence authorized by law for a

persistent violent felon convicted of first-degree robbery.  Rogers could not have reasonably

hoped for a better sentence even had trial counsel not taken an adverse position.  Thus, appellate

counsel was not ineffective for failing to raise this claim on direct appeal.

       8.    <u>Cumulative Error</u>

     Finally, Rogers argues that appellate counsel was ineffective for failing to raise on direct

appeal that he was denied a fair trial due to the cumulative errors of trial counsel and the trial

judge.  However, because all of Rogers's individual claims of error lack merit (<u>see</u> <u>supra</u> Part

III.A.; <u>infra</u> Part III.B-C), appellate counsel did not act unreasonably by failing to raise this claim

on direct appeal.  The state's rejection of this claim was not contrary to, nor an unreasonable

application of, clearly established federal law.

*   *   *   *   *

     In sum, the state courts' rejection on the merits of Rogers's ineffective assistance of

appellate counsel claims was not contrary to, nor an unreasonable application of, clearly

established federal law.

---

inquiries into disagreements between trial counsel and defendant did not create an actual conflict of interest, and
therefore analyzed the ineffective counsel claim under <u>Strickland</u>).

### B.      Denial of Impartial Psychiatric Evaluation

Rogers alleges that he was denied an evaluation by an impartial psychiatric expert prior to trial and was therefore unable to "adequately confront his accuser." (Pet. at 27-29.) Rogers previously raised this claim in his motion to vacate the judgment pursuant to CPL § 440.10 in which he invoked the constitutional standard of Ake v. Oklahoma, 470 U.S. 68 (1985). (Def. Mot. to Vacate J. at 45.) Because the New York Supreme Court denied this claim on the merits and the Appellate Division denied leave to appeal, the claim has been exhausted. The court thus turns to the claim's merits.

Rogers alleges that on the day he was indicted, his attorney at the time, Wilfred Rodriguez, "beseeched the court to have a CPL § 730 examination conducted." (Id. at 27.) Rogers claims that the two mental health experts who evaluated him while he was in custody were "not impartial." (Id. at 17, 28.) According to Rogers, the examiners made false statements in their clinical reports when they wrote that Rogers denied experiencing depression and anxiety, denied ever trying to harm himself, and denied receiving mental health treatment in the past. (Id. at 28.) Rogers also alleges that the mental health examiners were biased because they wrote that he was trying to "malinger" the court.

It is well-settled "that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." Ake, 470 U.S. at 74. In Ake, the indigent defendant's sole defense at the guilt stage of his murder trial was insanity. Id. at 72. The Court held that he was denied his constitutional right to a fair trial when he was denied the assignment of a psychiatrist to evaluate his mental state at the time of the crime. Id. at 83.

23

Here, there is no evidence in the trial transcript that Rogers specifically requested psychiatric evaluation for the purpose of his defense, and his claims to the contrary are conclusory and vague. Contrary to Rogers's claim that he had "no other defense" (Def. Mot. to Vacate J. at 45), the fact that counsel declined to request an additional psychiatric evaluation is entirely consistent with his reasonable strategy to focus on contesting the weapon element of the first-degree robbery charge. While courts have previously suggested that "Ake supports the right to court appointed psychiatric experts whenever expert psychological determinations are central to the outcome," Esquilin v. Walker, No. 91-CV-4608 (CPS), 1992 WL 151903 at *4 (E.D.N.Y. June 16, 1992) aff'd, 990 F.2d 624 (2d Cir. 1993), "Ake does not require the appointment of an expert when the court has not been provided with a sufficient, believable factual showing in support of the defense's nonfrivolous need for the expert," id. at *8.

The court is not persuaded by Rogers's conclusory claim that additional psychiatric evaluation would have impacted his case. Rogers admitted at trial that he was aware of his actions at the time of the bank robbery. (Trial Tr. at 252.) And while in custody prior to trial, Rogers was examined by psychologists on two separate occasions. His claim that these practitioners were biased is conclusory and lacks evidentiary support. Rogers has therefore failed to sufficiently establish that his constitutional rights were violated when he was not provided with additional psychiatric evaluations during his trial. The state court's rejection of this claim was thus not contrary to, nor an unreasonable application of, clearly established federal law.

### C.  Trial Court's Failure to Respond to Handwritten Letters

Rogers claims that on or about November 15, 2002, he sent via certified mail a handwritten letter to the trial court. The letter allegedly told the court: "I am not guilty as

24

charged; and, I have the evidence to prove I have a problem with the mental health malady of depression, and I was not aware of my actions or that they were wrong at the time of the offense." (Def. Mot. to Vacate J. at 18.)  Rogers further asserts that on December 10, 2002, he handed to the trial judge a second handwritten letter. (Id. at 19.)  The trial record reflects that on December 10, 2002, Rogers told the judge, "I have a letter that I wrote you last night and I was hoping that I could give it to you to read." (Trial Tr. at 72.)  In his habeas Petition, Rogers claims that the trial court failed to protect his right to effective assistance of counsel when it declined to investigate and respond to his letters.  (Pet. at 31.)

The Supreme Court, Queens County, found Rogers's allegations regarding the letters conclusory and denied his motion to vacate the judgment. (Aug. 11, 2008, N.Y. Sup. Ct. Decision & Order at 232.)  This court agrees.  Even assuming Rogers's assertions to be true, is not clear how he was prejudiced by the trial court's failure to respond:  To the extent the letters raised the possibility of a psychiatric defense, such a defense had been considered and reasonably rejected as futile by his counsel. (Sentencing Tr. at 8.)  Moreover, at trial Rogers testified that there was no question in his mind that he was robbing the bank that day. (Trial Tr. at 252.)  As discussed above, Rogers's trial counsel carefully considered the best strategies available given the circumstances and the weight of the evidence.  Rather than arguing for a defense based on lack of mental capacity, counsel reasonably sought to reduce Rogers's exposure from first-degree to third-degree robbery which, if successful, would have resulted in a substantially lower prison sentence.  Thus, contrary to Rogers's conclusory allegations, the trial court did not fail to protect his right to assistance of counsel.

**D.    Supplemental Motions**

After Respondent had opposed Rogers's Petition (and Rogers had replied), Rogers filed

25

two supplemental filings seeking to amend his Petition. The first, filed on February 4, 2013,

though styled as a motion to amend, is properly construed as a notice of authority. The second,

filed on June 7, 2013, is a motion to amend that attached a Proposed Amended Petition. Neither

of these submissions alters the court's conclusion that habeas relief is unwarranted.

       1.   Notice of Authority

     On February 4, 2013, Rogers notified the court of People v. Maxwell, 933 N.Y.S.2d 386

(N.Y. App. Div. 2d Dep't 2011), which he had recently discovered. (Mot. to Am. Pet. (Dkt. 10-

18).) He argues that this case supports his claim that the trial court's denial of his ineffective

assistance arguments when it denied his motion to vacate the judgment was objectionably

unreasonable. This court has taken notice of this case, but its ultimate conclusion is unaffected.

     In Maxwell, the Appellate Division held that the trial court should not have summarily

denied a motion under CPL § 440.10(2)(b) as procedurally barred where some of the defendant's

allegations of ineffectiveness of counsel involved matters outside the record, thus making it

impossible to say that "sufficient facts appear on the record with respect to the ground or issue

raised upon the motion to permit adequate review thereof upon [] appeal." Maxwell, 933

N.Y.S.2d at 387.

     Rogers's § 440.10 motion was denied under CPL § 440.10(2)(a), because his argument of

ineffective trial counsel had already been raised on appeal. (Aug. 11, 2008, N.Y. Sup. Ct.

Decision & Order at 232.) With respect to Rogers's other basis for ineffective counsel—that his

trial counsel erroneously admitted his guilt in opening statements—which was not raised on

appeal, the trial court denied the motion and held that this claim was subject to the procedural bar

of § 440.10(2)(c) because Rogers was in a position to raise it on appeal or could easily have done

so, but unjustifiably failed to do so. In any event, the facts relevant to this claim were present in the record on appeal.

Thus, the facts in petitioner's case are distinguishable from Maxwell because sufficient facts appeared on the record to permit adequate review thereof on appeal. Therefore, the § 440 court's denial of petitioner's motion was not objectively unreasonable.

### 2.    Motion to Amend

On June 7, 2013, Rogers filed another motion to amend his Petition seeking to add a claim of ineffective assistance of trial counsel. (Mot. to Amend (Dkt. 23); see Proposed Am. Pet. (Dkt. 23-1).) Specifically, Rogers argues that (1) Rodriguez, who represented Rogers in pre-trial proceedings, "abandoned him" by having other attorneys appear in his stead; (2) Rodriguez failed to pursue a psychiatric defense; (3) Harold Ehrentreu, Rodgers's trial counsel, did not pursue a psychiatric defense; (4) Ehrentreu conceded that Rogers had committed elements of the crime; (5) Ehrentreu did so without having conducted a proper investigation; and (6) Ehrentreu violated Rogers's Fifth Amendment right to testify by not asking him certain questions at trial. This motion is denied as untimely.[5]

Where a petitioner seeks "to amend his petition long after the one-year statute of limitations [set forth in AEDPA] ha[s] run, he [is] required to show that his amended petition relates back in accordance with [Federal Rule of Civil Procedure] 15 (c)." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 816 (2d Cir. 2000). Rule 15(c) provides that an amended pleading relates back if "the amendment asserts a claim or defense that arose out of the conduct,

---

[5]    The motion is also denied as futile because the ineffective assistance of trial counsel claim fails on the merits. Rodriguez's strategic decisions to have other attorneys appear at certain court appearances and to not pursue a psychiatric defense were not unreasonable. (See supra Part III.A.2-3.) Moreover, Rogers's contentions concerning Ehrentreu were decided on the merits by the Second Department on direct appeal. See People v. Rogers, 796 N.Y.S.2d 134, 135 (N.Y. App. Div. 2d Dep't 2005). As indicated above, this was not an unreasonable determination of facts or contrary to Supreme Court precedent. See 28 U.S.C. § 2254(d).

27

transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c).  In other words, if a new claim for habeas relief is "supported by facts that differ in both time and type from those the original pleading set forth," the amended petition does not relate back and is untimely.  Mayle v. Felix, 545 U.S. 644, 650 (2005).  "The relation back doctrine has been narrowly construed in the context of federal habeas corpus petitions by courts in this circuit." Sookoo v. Heath, No. 09-CV-9820 (JGK), 2011 WL 6188729, at *5 (S.D.N.Y. Dec. 12, 2011).

Here, Rogers moved to amend his Petition long after AEDPA's one-year statute of limitations had run.  Because Rogers sought collateral relief in the state courts, his time to file his Petition did not begin until May 20, 2010, when the New York Court of Appeals denied Rogers leave to appeal the decision denying his second petition for a writ of error coram nobis.  See 28 U.S.C. § 2244(d)(2) (establishing this tolling rule).  Thus, Rogers's original Petition—filed on June 1, 2010—was timely, but his motion to amend—filed on June 7, 2013—was not.  Thus, Rogers's Proposed Amendment Petition must satisfy Rule 15(c) and relate back to his original Petition.  See Mayle, 545 U.S. at 650; see also 28 U.S.C. § 2242.  It does not.

Rogers's Proposed Amended Petition must be dismissed because it does not assert "a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Fed. R. Civ. P. 15(c).  The original Petition failed to identify the facts that support his new claims.  Although Rogers asserted an ineffective assistance of appellate counsel claim in his original Petition, that claim did not sufficiently specify the alleged misconduct raised in his new ineffective assistance of trial counsel claims.  Instead, Rogers's claims in his original Petition concerned facts occurring on appeal, not at trial.  The new claim is therefore supported by "facts that differ in both time and type from those the original pleading set forth."  Mayle, 545 U.S. at 650; see also Sookoo, 2011 WL 6188729, at *5-6.  The motion to amend is denied.

## IV.    CONCLUSION

For the reasons set forth above, Rogers's Petition for Writ of Habeas Corpus and his motion to amend are DENIED. His motion to amend the Petition is also DENIED. No certificate of appealability shall issue because Rogers has not made a substantial showing of the denial of a constitutional right for the purposes of 28 U.S.C. § 2253. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York          NICHOLAS G. GARAUFIS
       August 2 , 2013            United States District Judge

29